The M. L. Improvement Corporation, Claimant, v. The State of New York, Defendant.

## Claim No. 17069.

Court of Claims, May, 1922.

Claims against state — premises leased by industrial commission but vacated before end of term — failure to give due notice of intention — rejection of claim by comptroller prerequisite to starting action.

A lease by claimant of premises in the city of New York to the state for a term beginning July 1, 1919, and ending February 1, 1921, at a stipulated annual rental payable in equal installments in advance on the first day of each month during the term, contained no covenant of defeasance. The premises were occupied by the state industrial commission up to and including a part of the month of April, 1920, and the rent for that month was paid. An offer of one of the industrial commissioners, made on or about April 6, 1920, to surrender the lease was refused by claimant who on or about the twenty-eighth of that month was notified by letter from the same commissioner that the state had vacated the premises and that claimant was at liberty to let them on the best terms and conditions obtainable on such tenancy as might be desired. After April, 1920, claimant each month during the remainder of the term of the lease forwarded to the industrial commission a bill for the rent due for that month, none of which bills were paid. On or about March 16, 1921, a representative of claimant called at the office of the state comptroller and upon informing one of the deputy comptrollers that claimant had a claim against the state for nine months' rent because of its breach of the lease, he was told that the comptroller had no jurisdiction in the matter and that the claim should be filed with the trustees of public buildings with whom the lease was made. The next day claimant presented to the executive auditor of said trustees a claim for nine months' rent which was not paid. On June 23, 1921, claimant filed notice of intention and about a month later filed the claim herein. Held, that the only breach by the state was its breach of the covenant to pay the specified rent at the time provided, which was a breach recurring on the first day of every month during the term of the lease subsequent to April 30, 1920; therefore, as to all installments of rent which became due and payable prior to December 23, 1920, or more than six months prior to the filing of the notice of intention, the court had no jurisdiction to make an award, and a motion to dismiss the claim on that ground will be granted.

The rent payable under the lease being an expense of the industrial commission under section 44 of the Labor Law, a motion to dismiss the whole claim on the ground that it was founded upon an express contract and that no part thereof had been rejected by the comptroller will be granted, as in order to confer jurisdiction upon this court to determine the claim it must first have been rejected by the comptroller.

A contention that the presentation of monthly bills to the industrial commission, the conversation between claimants' representative and the deputy comptroller, and the presentation of the claim to the trustees of public buildings, coupled with the non-payment of the claim, constitute a sufficient rejection of the claim under the statute to confer jurisdiction upon this court, is untenable and is no answer to the motion to dismiss.

*Pittsburgh & Shawmut Coal Co.* v. *State of New York*, 118 Misc. Rep. 50, distinguished.

Claim for rent.

**696** M. L. IMPROVEMENT CORPORATION *v.* STATE OF NEW YORK.

Court of Claims, May, 1922. [Vol. 118

*Thomas & Houghton (Woolsey A. Sheppard,* of counsel), for claimant.

*Charles D. Newton (Porter L. Merriman,* deputy attorney-general, of counsel), for state of New York.

CORWIN, J. In the month of June, 1919, the state of New York, by and through its trustees of public buildings, entered into a lease with claimant of certain premises in the city of New York for a term to begin July 1, 1919, and to end February 1, 1921, at a stipulated annual rental, payable in equal monthly installments in advance on the first day of each and every month during the term of said lease. The state entered into possession of said premises pursuant to the terms of said lease and continued to occupy the same by its industrial commission up to and including a portion of the month of April, 1920, paying the stipulated rental therefor to and including April 30, 1920. On or about April 6, 1920, one of the industrial commissioners offered to surrender said lease, which offer was refused. On or about April 28, 1920, the same industrial commissioner notified claimant by letter that the state had vacated said premises and that claimant was at liberty to proceed to let the premises on the best terms and conditions obtainable, either on monthly tenancy or on such other tenancy as might be desired. The claimant did thereafter endeavor to let the premises, but unsuccessfully. Said lease contained no covenant of defeasance.

Subsequent to April 30, 1920, claimant forwarded to the industrial commission each month during the remainder of the term a bill for the rent due for that month, none of which was paid. On or about March 16, 1921, Augustus H. Houghton, representing the claimant, called at the office of the state comptroller and told Mr. Kearney, one of the deputy comptrollers, verbally that he had a claim of this claimant against the state for a breach of a lease of property belonging to the claimant and occupied by the industrial commission, which claim was for nine months' rent and amounted to about $12,000. Mr. Kearney thereupon told said Houghton that the comptroller had no jurisdiction in the matter and that the claim should be filed with the trustees of public buildings. On or about March 17, 1921, claimant presented to the executive auditor of the trustees of public buildings a claim for nine months' rent which was not paid.

On June 23, 1921, claimant filed notice of intention to file a claim; and on July 19, 1921, filed this claim, alleged to be for breach of contract, the amount of which is $12,375, being the

amount of the nine installments of rent which became due subsequent to April 30, 1920.

Upon the trial the state moved to dismiss as to all installments of rent which became due more than six months prior to the filing of the notice of intention upon the ground that as to those items the court had no jurisdiction; and moved to dismiss the whole claim upon the ground that this is a claim founded upon express contract and that no part thereof has been rejected by the officer to whom it was submitted by law for audit or determination.

While the logical method of considering these motions would be to take up the second motion first, in view of the fact that a determination of that in favor of the state would eliminate the necessity of passing upon the other, we deem it wise in this case to consider the questions raised by both motions, and shall, therefore, discuss them in the order made.

The claimant contends as to the first motion that the claim is for damages for breach of the entire contract; that its damages might have been reduced or eliminated by reletting and were, therefore, not ascertainable until the expiration of the term of the lease; and that its cause of action did not accrue until that time.

The only breach by the state was its breach of the covenant to pay the specified rent at the time provided, which was a breach recurring on the first day of every month during said term subsequent to April 30, 1920. Every bill rendered and claim made by the claimant against the state prior to the filing of this claim was for rent due under the lease. Such were the monthly bills presented to the industrial commission and such was the claim presented to the executive auditor on March 17, 1921. It seems to us that the distinction sought to be drawn in this case between a claim for rent due and unpaid under the lease and a claim for damages for breach of the covenant to pay the rent, if any such distinction exists, is too fine to be material. In any event, as such breach was one recurring each month, a claim based thereon would also accrue each month.

The claimant was under no obligation to relet the premises for the benefit of the state (*Becar* v. *Flues,* 64 N. Y. 518; *Clendinning* v. *Lindner,* 9 Misc. Rep. 682); and if it had done so, in the absence of a covenant of defeasance, its action would have amounted to an acceptance of the proffered surrender and the state would have been released from further liability.

Of course, if the lease in question had contained the usual covenant of defeasance, the claimant might have re-entered and relet under such circumstances that its damages could not have been ascertained until the expiration of the term, and in that

**608** M. L. Improvement Corporation *v.* State of New York.

Court of Claims, May, 1922. [Vol. 118

case its cause of action would undoubtedly have accrued at that time; but, in the absence of such a covenant, the amount of its damages became fixed and unchangeable upon the default of each separate installment of rent.

It may be argued that the letter of the industrial commissioner of April 28, 1920, in which he stated that the claimant was at liberty to let the premises on the best terms and conditions obtainable, coupled with the subsequent efforts of the claimant to relet the premises, had the same effect as the inclusion in the lease of a defeasance clause. The defect in this contention lies in the fact that the letter contained no agreement to pay any deficiency, nor did the industrial commissioner have any authority to make such an agreement.

The case of *McCready* v. *Lindenborn*, 172 N. Y. 400, 407, relied upon by the claimant, merely holds that the breach of a covenant to pay an installment of rent when due is not such a breach of the entire contract as will permit a recovery of all the damages in advance. In that case the landlord had re-entered under a defeasance clause after a default in the payment of an installment of rent, and it was held that no further rent, as such, could accrue because the lease proper was at an end and the relation of landlord and tenant no longer existed; that the landlord was thereafter confined to her damages arising from the covenant of defeasance which under the terms of such covenant arose from month to month; and that she could not recover such damages in advance of their accrual. In so holding the court used the following language: " By the express contract of the parties a separate and independent cause of action arose under this covenant [of defeasance] every month when there was a deficiency ascertained in the manner provided. The plaintiff was at liberty to allow the causes of action for monthly deficiency to accumulate and to recover upon several at the same time, but she could not recover any deficiency until it had actually accrued and had been ascertained in the mode provided by the covenant."

If the monthly deficiencies arising under a covenant of defeasance constitute separate and independent causes of action, it would seem to be a logical deduction that monthly installments of rent due under the terms of a lease constitute separate and independent causes of action; and while the court does say that several of these separate causes of action may be allowed to accumulate and be recovered upon at the same time, it by no means follows that if they are so accumulated until a statute of limitation has run against some of them, recovery may still be had upon those against which the statute has run.

If each installment of rent when due constituted a separate and independent cause of action, those installments which became due more than six months prior to the filing of the notice of intention are barred under the provision of the statute requiring the claimant to file a claim or notice of intention within six months after the claim shall have accrued. *Buckles* v. *State of New York*, 221 N. Y. 418.

We, therefore, conclude that we have no jurisdiction to make an award upon so much of the claim as is founded upon the installments of rent which became due and payable prior to December 23, 1920, or more than six months prior to the filing of the notice of intention.

Moreover, we are of opinion that we must grant the motion of the attorney-general to dismiss the whole claim upon the ground that this is a claim founded upon an express contract and that no part thereof has been rejected by the officer to whom it is submitted by law for audit or determination. In answer to this motion, the claimant contends that its presentation of the monthly bill to the industrial commission, the conversation between Houghton and Deputy Comptroller Kearney, and its presentation of the claim to the executive auditor of the trustees of public buildings, coupled with its failure to receive payment of its claim, constitutes a sufficient rejection under the statute to confer upon this court jurisdiction.

As above stated, we can see no practical distinction between a claim on the lease for rent due and unpaid and a claim for damages for breach of the covenant to pay the rent, and we are, therefore, led to the conclusion that this claim is in effect one on an express contract.

The rent payable under the lease was an expense of the industrial commission. Section 44 of the Labor Law provided that all necessary expenses incurred by the commission in the discharge of its duties should be paid by the state treasurer upon the warrant of the comptroller. The comptroller is vested with the exclusive power to audit claims against the state where payment out of the treasury is provided by law except in those cases where there is a special statutory provision to the contrary. *People ex rel. Grannis* v. *Roberts*, 163 N. Y. 70; *Quayle* v. *State of New York*, 192 id. 47. To confer upon this court jurisdiction to determine this claim, it must first have been rejected by the comptroller. No such rejection can be predicated upon the conversation between the witness Houghton and Deputy Comptroller Kearney.

This is not in conflict with the decision in the case of *Pittsburgh*

*& Shawmut Coal Co.* v. *State of New York*, 118 Misc. Rep. 50, because that case involved a statute which provided a specific fiscal scheme which differentiated it from the present case.

It follows that the motions made by the attorney-general are granted, with an exception to the claimant in each instance, and the claim is dismissed.

ACKERSON, P. J., concurs.

Judgment accordingly.